WELCH, J.
12The defendant, Kaven P. Clouatre, was charged by grand jury indictment with simple rape, a violation of La. R.S. 14:43. The defendant pled not guilty and, following a jury trial, was found guilty as charged. The defendant was sentenced to twelve years at hard labor without benefit of parole, probation, or suspension of sentence. The defendant now appeals, designating one assignment of error. We affirm the conviction and sentence.
FACTS
On Saturday, March 6, 2010, fourteen-year-old A.H.,[1] who lived in Prairieville, went to the defendant’s trailer in Port Allen to sleep over. A.H.’s family (her mother and siblings) were friends with the twenty-four-year-old defendant, his wife, Jessica, and their children. Also, A.H.’s mother was previously married to Jessica’s father (which, at that time, made Jessica A.H.’s stepsister). Sleeping over with A.H. were her younger half-sister and her good friend, Angela (who was the older half-sister of A.H.’s half-sister, but not related to A.H.). A.H.’s mother was not there. Jessica had bought alcohol earlier in the day and, later that evening, the defendant went to the store and purchased more alcohol.
A.H. testified at trial. The defendant did not testify at trial. A.H. and the defendant both gave recorded interviews to Detective Ray Bryant, with the West Baton Rouge Parish Sheriffs Office. Both interviews were played at trial. According to A.H.’s testimony and her interview, A.H. drank alcohol that night, including tequila and Bacardi Silver wine coolers. Later that evening, A.H. became sick and vomited on her shirt and pajama pants. The defendant and A.H.’s half-sister took off A.H.’s shirt and put a clean one on her. The defendant took off RA.H.’s pajama pants, which also had vomit on them. *1097 A.H. did not change into clean pants, because she was already wearing shorts and underwear. A.H. lay down on the sofa. The defendant lay down behind A.H. on the sofa. A.H.’s half-sister and Angela were sleeping on a mattress next to the sofa. According to the defendant and A.H. in their interviews, the defendant lay down with A.H. to make sure she was all right. A.H. testified that she fell asleep, but then woke up to the defendant pulling her pants (shorts) down. She asked the defendant what he was doing, and he told her he was not going to hurt her. As the defendant was pulling her shorts and underwear down, A.H. told him several times “no” and “stop.” The defendant then vaginally penetrated her with his penis. When the defendant was finished, he went to lie down with his wife. A.H. did not know if the defendant had ejaculated or not. A.H. sat on the sofa and cried before going to the bathroom to clean herself with a rag. A.H., a virgin before being raped, experienced significant vaginal bleeding. In her interview, A.H. stated that at no point was she on top of the defendant. When asked how the sex took place, she responded that “he was behind me.”
Sunday, the next day, when A.H. returned home, she called her best friend Patrick to come pick her up. He did and, as they were driving, A.H. told Patrick that the defendant had raped her. Patrick told A.H. to tell her mother, or he would. The following day, Monday, A.H. was at school and called her mother to come pick her up. When her mother arrived at school, A.H. told her that the defendant had raped her. A.H.’s mother took her to Dr. Arnette Scavella at Prime Medical. Dr. Scavella testified at trial that she examined A.H. and found a vaginal tear, which was suggestive of intercourse. The underwear A.H. wore the night she was raped were brought to Detective Bryant, who turned them over to the Louisiana State Police Crime Lab. Phillip Simmers, a DNA analyst for the crime lab, testified at trial that the underwear had a large, reddish-brown stain in the crotch |4area. The presumptive test for blood on the stain was positive. Simmers testified that the seminal test was inconclusive because of the heavy staining on the underwear, and there were no findings of spermatozoa.
In his interview, the defendant confirmed everything that A.H. had stated, up to the point where he lay down on the sofa with her. The defendant denied that he raped A.H. He stated that he also drank alcohol that night and that he knew he should not have given them alcohol. The defendant told the detective that he lay on the sofa with A.H. to “make sure she [was] okay.” Then he fell asleep and vaguely remembered A.H. on top of him at some point in time. Following these initial comments to Detective Bryant, the defendant continued throughout the interview with seemingly equivocal responses. For example, the detective asked, “So you’re saying you could’ve had sex or you could’ve not?” The defendant replied, “We could have had sex. I’m not — I’m not going lie. We could have had sex. I remember her being on top of me, but I — I wouldn’t I wouldn’t do anything to [A.H.] like that.” Later, the defendant provided less than definitive responses, such as, “There’s a possibility that it could have happened, but I don’t — I wouldn’t have done it forcibly”; “I’m not saying ... I had sex with her, but I’m not saying I didn’t”; and “But I’m not saying she tried to do anything to me or anything like that, but it’s a very good possibility that we had sex.” When asked by Detective Bryant if he (the defendant) believed A.H. would lie about having had sex, the defendant responded that he did not believe she would lie, and continued, “if I did anything, sir, I was drinking, and I would love to apologize to her, you know, if I did anything. But sir, like I said, I vaguely remember her being on top of me at one *1098 point in time. So if we had sex,- then yeah, you know.” Near the conclusion of the interview, Detective Bryant asked the defendant if he was willing to give a DNA swab. The defendant responded in the affirmative and added, “Like I said, if she — Apparently, if we had sex, we had sex, but I didn’t try to rape her.”
¡.ASSIGNMENT OP ERROR
In his sole assignment of error, the defendant argues the evidence was insufficient to support the simple rape conviction. Specifically, the defendant contends that the State did not prove beyond a reasonable doubt that A.H. was incapable of resisting or of understanding the nature of the act by reason of a stupor or abnormal condition of mind produced by an intoxicating agent.
A conviction based on insufficient evidence cannot stand as it violates due process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. To uphold a conviction, the standard of review for the sufficiency of the evidence is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See La.C.Cr.P. art. 821(B); State v. Ordodi, 2006-0207 (La.11/29/06), 946 So.2d 654, 660; State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988). The Jackson standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that, in order to convict, the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. See State v. Patomo, 2001-2585 (La.App. 1st Cir.6/21/02), 822 So.2d 141, 144.
Louisiana Revised Statute 14:41 states, in pertinent part:
A. Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person’s lawful consent.
B. Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime.
Louisiana Revised Statute 14:43(A) defines simple rape, in pertinent part, as:
IfiA. Simple rape is a rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of a victim because it is committed under any one or more of the following circumstances:
(1) When the victim is incapable of resisting or of understanding the nature of the act by reason of a stupor or abnormal condition of mind produced by an intoxicating agent or any cause and the offender knew or should have known of the victim’s incapacity.
The defendant asserts in his brief that the evidence was insufficient to prove that A.H. was incapable of resisting or of understanding the nature of the act by reason of a stupor or abnormal condition of mind produced by an intoxicating agent. According to the defendant, A.H.’s own testimony that she asked the defendant what he was doing as he pulled down her shorts, and that she told the defendant to “stop” as he prepared to rape her, proved that she was not incapable of resisting or of understanding the nature of the act by reason of her intoxication. The defendant avers that A.H. could have cried out to awaken any number of people for help. The defendant concludes in his brief that A.H. was “completely aware at the time as to the nature of the act.”
*1099 We have found nothing in the jurisprudence that supports the defendant’s position. To the contrary, our review of this issue makes clear that the “stupor or abnormal condition of mind produced by an intoxicating agent” element of simple rape does not require unconsciousness or such incognizance as to render the victim unaware that she was raped; nor do the victim’s verbal protestations during the act of rape indicate that she was necessarily capable of effectively resisting being raped. As the third circuit noted in State v. Clark, 2004-901 (La.App. 3rd Cir.12/8/04), 889 So.2d 471, 475, “the very purpose of the simple rape statute [is] to criminalize behavior which takes advantage of a person who has had too much to drink and participates in an act to which he or she would not otherwise have consented.” In Clark, C.T., the female victim, had smoked marijuana and taken a muscle relaxer. C.T. testified that after sleeping for a while she was awakened by |7the sound of the defendant coming into her room. He took off his clothes, got in bed with her, and proceeded to have sex with her. Id. at 472-73. She testified that she was “frozen” and did not fight him off, scream to a friend for help, or try to get away. Rather, she pleaded with him to stop and was overpowered by him. She stated that he pinned her down, but he did not threaten her and was not violent with her. The defendant testified the sexual act was consensual. The third circuit found that under these facts, the defendant was guilty of simple rape. Id. at 475.
In State v. Porter, 93-1106 (La.7/5/94), 639 So.2d 1137, 1143, the supreme court stated that a “defendant may be convicted of simple rape when the victim’s capacity to resist was negated by an abnormal condition or state of mind produced by alcohol consumption.” In Porter, there was evidence of alcohol consumption by the victim and of an alcohol-influenced state of mind. Although the victim denied excessive drinking and recalled the events of the ordeal, a reasonable juror could have concluded that the essential elements of simple rape had been proved. There was evidence from which the jury might have inferred, despite the victim’s protestations of resistance, that she became intoxicated with these two young men and that they criminally took advantage of her alcohol-influenced incapacity to resist their advances effectively. Porter, 639 So.2d at 1143.
In State v. Brown, 2001-41 (La.App. 5th Cir.5/30/01), 788 So.2d 694, 701, the evidence showed that the victim had consumed about eight beers. Co-defendant Arthur Williams, who had just minutes before raped the victim, took her to a shed where the defendant was waiting. She (the victim) and the defendant testified that the defendant vaginally penetrated her. She testified that it was done without her consent. The facts indicate the victim was alert and conscious while the defendant raped her. During the assault, she begged the defendant to help her, and he stopped raping her. The fifth circuit found that the facts were sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant 1 ^committed simple rape.
In State v. Fruge, 2009-1131 (La.App. 3rd Cir.4/7/10), 34 So.3d 422, 430-32, writ denied, 2010-1054 (La.11/24/10), 50 So.3d 828, a ease similar to the instant matter, J.H. drank alcohol, then fell asleep on the couch. She was awakened by the defendant kissing on her neck, grabbing her breasts, then finally vaginally penetrating her. J.H. yelled for her sister, kept screaming “no,” and finally pushed the defendant off of her. The defendant denied having sex with J.H. He also testified he was drunk and did not know exactly what was going on. The third circuit found that under these facts, the State *1100 proved beyond a reasonable doubt that the defendant committed simple rape.
Thus, the jurisprudence on the offense of simple rape makes clear that the element of a stupor or abnormal condition of the mind produced by an intoxicating agent, such as alcohol, does not require an unaware victim with no capacity to resist, but rather an agent-influenced incapacity to effectively resist the advances of the perpetrator. See Porter, 639 So.2d at 1143. The degree of alcohol influence is for the jury to decide. Id. The jury in this case, heard the testimony, viewed the evidence presented to it at trial, and found the defendant guilty. The jury apparently believed A.H.’s testimony, which revealed that the defendant, after providing enough alcohol to A.H. to make her sick and pass out on the sofa, lay down on the sofa with her and proceeded to rape an inebriated fourteen-year-old girl who could not effectively resist his advances.
The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact’s determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a | factfinder’s determination of guilt. State v. Taylor, 97-2261 (La.App. 1st Cir.9/25/98), 721 So.2d 929, 932. We are constitutionally precluded from acting as a “thirteenth juror” in assessing what weight to give evidence in criminal cases. See State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Quinn, 479 So.2d 592, 596 (La.App. 1st Cir.1985). In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Higgins, 2003-1980 (La.4/1/05), 898 So.2d 1219, 1226, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). Further, the testimony of the victim alone is sufficient to prove the elements of the offense. State v. Orgeron, 512 So.2d 467, 469 (La.App. 1st Cir.1987), writ denied, 519 So.2d 113 (La.1988).
After a thorough review of the record, we find that the evidence supports the jury’s verdict. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of simple rape. See State v. Calloway, 2007-2306 (La.1/21/09), 1 So.3d 417, 418 (per curiam).
The assignment of error is without merit.
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED.

. In accordance with La. R.S. 46:1844(W), the initials of the child victim and her family members are used to protect the identity of the minor child.