STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 KA 0033

STATE OF LOUISIANA

VERSUS

JAMES MATTHEW COLE

Judgment Rendered: SEP 2 7 2019

* * * * *

On Appeal from the
22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Trial Court No. 586690

Honorable Scott Gardner, Judge Presiding

* * * * *

Warren L. Montgomery                      Attorneys for Appellee,
District Attorney                         State of Louisiana
Matthew Caplan
Assistant District Attorney
Covington, LA


Samuel H. Winston                         Attorneys for Defendant-Appellant,
New Orleans, LA                           James Matthew Cole
James E. Boren
Baton Rouge, LA


* * * * *

BEFORE: HIGGINBOTHAM, PENZATO, AND LANIER, JJ.

J. LANIER Concurs in part and dissents in part
with reasons WIC

**HIGGINBOTHAM, J.**

The defendant, James Matthew Cole, was charged by bill of information with sexual battery (victim under the age of thirteen years) (count 1), a violation of La. R.S. 14:43.1(C)(2); molestation of a juvenile (incidents of molestation recur during a period of more than one year) (count 2), a violation of La. R.S. 14:81.2(C); and second degree rape (count 3), a violation of La. R.S. 14:42.1. The defendant pled not guilty and, following a jury trial, was found guilty as charged on all counts. The defendant filed a motion for postverdict judgment of acquittal, which was denied. For the sexual battery conviction, the defendant was sentenced to ninety-nine years imprisonment at hard labor, with twenty-five years of the sentence to be served without benefit of parole, probation, or suspension of sentence. For the molestation of a juvenile conviction, the defendant was sentenced to forty years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. For the second degree rape conviction, the defendant was sentenced to forty years imprisonment at hard labor, with two years of the sentence to be served without benefit of parole, probation, or suspension of sentence. The sentences were ordered to run concurrently. The defendant filed a motion to reconsider sentences, which was denied. The defendant now appeals, designating five assignments of error.

## FACTS

The victim, K.D.,[1] moved with her father to Texas when she was about six years old. At that time, K.D.'s paternal grandmother, Judy, lived in a mobile home with her boyfriend, the defendant, in Lacombe, St. Tammany Parish. K.D. frequently visited her grandmother and the defendant and spent summers at their house. When K.D. was about eight years old, she and her father moved in with her grandmother and the defendant. About a year later, when K.D. was in the fourth grade, she and her father moved back to Texas. Then, in the summer before she went

_____

[1] The victim is referred to by her initials. See La. R.S. 46:1844(W).

2

into the sixth grade, K.D. moved back in with her grandmother and the defendant. A couple of years later, in 2015, K.D. moved back to Texas to live with her mother, but that summer went back to live with her grandmother and the defendant. In November 2016, when K.D. was fifteen years old, she again moved back to Texas to live with her mother and revealed to her mother that the defendant had been sexually abusing her for years. In December 2016, K.D.'s mother contacted the police. A few days later, K.D. was taken to the Dallas Children's Advocacy Center (CAC) and interviewed about the defendant's sexual abuse of her. The police in Texas contacted and referred the case to the St. Tammany Parish Sheriff's Office.

At trial, K.D. testified about the various incidents that occurred over the years when she was visiting or living in Louisiana with her grandmother and the defendant. When K.D. was eight years old, she and the defendant were "roughhousing" and she was lying on the defendant's stomach when he began rubbing her "butt." When she was nine or ten years old, she was in a swimming pool sitting on the defendant's lap, and he rubbed her "butt" and vagina. When K.D. was eleven or twelve years old, the defendant came into her bedroom when she was in her bed and rubbed her vagina, chest, and "butt." Before K.D. started the seventh grade, the defendant touched her almost every night with different parts of his body. He "would push really hard" on her vagina, causing her pain throughout the day.

In August 2015, according to K.D., the defendant made a "deal" with her. The defendant agreed not to touch her anymore if she agreed to let him do whatever he wanted to her on the first of every month. On September 1, 2015, when she was in the seventh grade, the defendant went into K.D.'s bedroom and reminded her of their deal. K.D. tried to get away, but the defendant pinned her down. The defendant took off K.D.'s shirt, pants, and underwear. He performed oral sex on her, and then vaginally raped her. He then turned her over and anally raped her. Later on other occasions, the defendant anally raped her. During each of these incidents of rape,

3

K.D. screamed, kicked, cried and pleaded with the defendant to stop, to no avail.

The defendant did not testify at trial.

## ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, the defendant argues that the trial court erred in denying his motion for a continuance of trial when the State, on the morning of trial, amended the bill of information on count 1, which expanded the date of the alleged offense by three years.

On the first day of trial, prior to voir dire, the State amended the bill of information regarding count 1, sexual battery where the victim was under the age of thirteen. The bill initially alleged the dates of the offense were on or between June 1, 2013 and June 29, 2014. The State amended the starting date to June 30, 2010. Defense counsel objected, arguing that adding these years to the time of the alleged offense would now require him to have to defend three years that he did not anticipate that he would have to defend against. Finding no showing of specific prejudice, the trial court denied defense counsel's implied motion to continue.

The defendant argues in brief that there was significant surprise and prejudice to him. According to the defendant, defense counsel was "completely caught off guard" by the amendment to count 1. The defendant suggests that the prejudice to him "should have been clear and apparent" since the trial preparation required for defense against the sex crime allegations of a nine-year-old is completely different from that required for sex crime allegations of a twelve-year-old.

Louisiana Code of Criminal Procedure article 707 provides:

> A motion for a continuance shall be in writing and shall allege specifically the grounds upon which it is based and, when made by a defendant, must be verified by his affidavit or that of his counsel. It shall be filed at least seven days prior to the commencement of trial.
> Upon written motion at any time and after contradictory hearing, the court may grant a continuance, but only upon a showing that such motion is in the interest of justice.

An exception to the requirement that motions to continue be in writing exists

where the circumstances that allegedly made the continuance necessary arose unexpectedly so that defense counsel did not have an opportunity to prepare a written motion. **State v. Parsley**, 369 So.2d 1292, 1294 n.1 (La. 1979). The purpose of a continuance is to prevent prejudicial surprise to the defendant. See **State v. Davis**, 385 So.2d 193, 197 (La. 1980). The decision whether to grant or refuse a motion for a continuance rests within the sound discretion of the trial judge, and a reviewing court will not disturb such a determination absent a clear abuse of discretion. **State v. Strickland**, 94-0025 (La. 11/1/96), 683 So.2d 218, 229; See La. Code Crim. P. art. 712. Whether refusal of a motion for continuance is justified depends on the circumstances of the case. Generally, the denial of a motion for continuance is not grounds for reversal absent a showing of specific prejudice. **State v. Lane**, 2015-0064 (La. App. 1st Cir. 11/9/15), 2015 WL 6951423, *6 (unpublished), writ denied, 2015-2248 (La. 3/24/16), 190 So.3d 1190.

When a bill of information is amended, a defendant may be entitled to a continuance. Louisiana Code of Criminal Procedure article 489 provides:

> If it is shown, on motion of the defendant, that the defendant has been prejudiced in his defense on the merits by the defect, imperfection, omission, uncertainty, or variance, with respect to which an amendment is made, the court shall grant a continuance for a reasonable time. In determining whether the defendant has been prejudiced in his defense upon the merits, the court shall consider all the circumstances of the case and the entire course of the prosecution. If it becomes necessary to discharge the original jury from further consideration of the case, the trial before a new jury will not constitute double jeopardy.

The defendant has the burden to establish that an amendment to a bill of information has prejudiced his defense so as to necessitate a continuance. See **State v. Ferguson**, 2015-0427 (La. App. 1st Cir. 9/18/15), 181 So.3d 120, 141, writ denied, 2015-1919 (La. 11/18/16), 210 So.3d 282. It is well settled in Louisiana jurisprudence that the State is not required to present evidence proving the date of the offense when it is not an essential element of the crime. **State v. Vidrine**, 2008-1059 (La. App. 3rd Cir. 4/29/09), 9 So.3d 1095, 1103, writ denied, 2009-1179 (La.

5

2/26/10), 28 So.3d 268. See **State v. Roth**, 52,359 (La. App. 2d Cir. 11/14/18), 260 So. 3d 1230, 1240, writ denied, 2018-2059 (La. 6/17/19), 273 So. 3d 1210 (frequently the State alleges a range of time based upon a traumatized victim's memory of when the act or acts of molestation occurred).

We see no reason to disturb the trial court's denial of the motion for a continuance. Under the original dates of the count 1 offense (June 1, 2013 to June 29, 2014), K.D. was eleven and twelve years old. That is, the defendant had always been on notice (at least sixteen months prior to trial) that the sexual battery charge against him was for a victim who was under thirteen years old. We do not find that the State's change in its charge of sexual battery of an eleven-year-old victim to sexual battery of a nine or ten-year-old victim was a prejudicial substantive change that would affect the merits of the defendant's defense. See **State v. Robinson**, 2011-0012 (La. App. 5th Cir. 12/29/11), 87 So.3d 881, 907-08, writ denied, 2012-0279 (La. 6/15/12), 90 So.3d 1059.

Based on the foregoing, the defendant has failed to show prejudice by the State's amendment to the bill of information. The State provided open-file discovery and supplied defense counsel with all available information concerning dates. There was no evidence that defense strategy would have been altered by earlier notice that one of the alleged crimes occurred before the time frame referenced in the bill of information. See **State v. Creel**, 540 So.2d 511, 513 (La. App. 1st Cir.), writ denied, 546 So.2d 169 (La. 1989). Accordingly, the trial court did not abuse its discretion in denying the motion for continuance.

This assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 2

In his second assignment of error, the defendant argues that he did not receive a fair trial because of the evidence against him that was allowed under La. Code Evid. art. 412.2.

6

Prior to trial, the State filed notice and supplemental notice of its intent to introduce evidence of other crimes, bad acts, or wrongs, pursuant to Article 412.2. The trial court ruled that such evidence was admissible at trial. At trial, other than the victim in the instant matter, three witnesses, C.C., A.R., and L.R., testified against the defendant regarding other crimes evidence.

C.C. testified that the defendant was her uncle. According to C.C., when she was a child (about thirty-five years ago), she would visit the defendant at his home. While playing, the defendant would grope her in the wrong place "too many times," including grabbing her between the legs. On one occasion, the defendant was doing lawn work at a house with a swimming pool. The defendant took C.C. with him so she could swim. When she came out of the bathroom, they went into a bedroom and sat on the bed. The defendant began grabbing C.C.'s breast. She pushed the defendant away and ran out the door. A.R. testified that the defendant was her uncle. When she was nine years old (about thirty years ago), she was swimming at a house where the defendant worked. After swimming, she went in the house, and the defendant touched her vagina. L.R., who was forty-five years old when she testified, stated that as a child, she was at the defendant's (her uncle) house quite often. When she slept over there, the defendant would touch her breasts and vagina. On one occasion, according to L.R., the defendant rubbed his penis on her vagina. L.R. indicated that the sexual abuse by the defendant probably lasted a few years. The State also introduced into evidence a record from the 22nd Judicial District, wherein the defendant pled guilty in 1990 to indecent behavior with a juvenile.

The defendant asserts in brief that the witnesses' testimony was unduly cumulative and that such testimony was the most prejudicial method the State had to introduce this evidence under Article 412.2. Further, the defendant contends that because the allegation by one of the witnesses did not result in formal charges, that witness should not have been allowed to testify at trial. The defendant concedes in

brief that the law in this State "likely forecloses this argument," but notes he is preserving this issue for review "should the law change on this issue."

We note initially that it is not necessary, for purposes of Article 412.2 testimony, for the defendant to have been charged, prosecuted, or convicted of the "other acts" described. See **State v. Layton**, 2014-1910 (La. 3/17/15), 168 So.3d 358, 362; **State v. Mischler**, 2018-1352 (La. App. 1st Cir. 5/31/19), __ So.3d __, 2019 WL 2334219, *17-18. Article 412.2 was a legislative response to earlier decisions from the Louisiana Supreme Court refusing to recognize a "lustful disposition" exception to the prohibition of other crimes evidence under La. Code Evid. art. 404. **State v. Buckenberger**, 2007-1422 (La. App. 1st Cir. 2/8/08), 984 So.2d 751, 757, writ denied, 2008-0877 (La. 11/21/08), 996 So.2d 1104. Article 412.2 provides:

> A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.
>
> B. In a case in which the state intends to offer evidence under the provisions of this Article, the prosecution shall, upon request of the accused, provide reasonable notice in advance of trial of the nature of any such evidence it intends to introduce at trial for such purposes.
>
> C. This Article shall not be construed to limit the admission or consideration of evidence under any other rule.

In order for any evidence deemed to fall within Article 412.2 to be admissible, it must pass the balancing test of Article 403 which provides: "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." Ultimately, questions of relevancy and admissibility of evidence are discretion calls for the trial court. Such determinations regarding relevancy and admissibility should not be overturned

8

absent a clear abuse of discretion. See **State v. Mosby**, 595 So.2d 1135, 1139 (La. 1992); **State v. Friday**, 2010-2309 (La. App. 1st Cir. 6/17/11), 73 So.3d 913, 925, writ denied, 2011-1456 (La. 4/20/12), 85 So.3d 1258.

In this matter, we find no abuse of discretion in the trial court's ruling allowing the introduction of the testimony of these three witnesses at trial. As to any temporal requirement regarding the admissibility of La. Code Evid. art. 412.2 evidence, remoteness in time is generally only one factor to be considered when determining whether the probative value of other acts evidence outweighs its prejudicial effect. See **State v. Wallace**, 2015-1219 (La. App. 1st Cir. 12/23/15), 185 So.3d 795, 806, writ denied, 2016-0432 (La. 6/3/16), 192 So.3d 755. We note as well that, during trial, the trial court specifically instructed the jury that the defendant was on trial only for the offenses charged, and that the other crimes evidence could be considered only for the limited purpose of whether it tended to show the defendant's lustful disposition toward young girls.

Based on the similarities with all of these cases, we find the evidence of other sexually assaultive behavior was highly relevant and probative to show the defendant's propensity for sexual activity with young females related to him or under his care. See **State v. Robertson**, 51,521 (La. App. 2nd Cir. 8/16/17), 243 So.3d 1196, 1203-04. It is clear that for many years the defendant exhibited a clear pattern of behavior made manifest by the continuity and consistency with which the other crimes were committed. His predilection to pedophilic activities appears long standing and firmly entrenched. See **State v. Driggers**, 554 So.2d 720, 727 (La. App. 2nd Cir. 1989). Accordingly, the probative value of the evidence was not outweighed by the danger of unfair prejudice under Article 403. See **State v. Verret**, 2006-1337 (La. App. 1st Cir. 3/23/07), 960 So.2d 208, 220-22, writ denied, 2007-0830 (La. 11/16/07), 967 So.2d 520.

This assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 3

In his third assignment of error, the defendant argues that the evidence was insufficient to support the conviction of sexual battery on a victim under the age of thirteen years. Specifically, the defendant contends that the record failed to establish that K.D. was under the age of thirteen years when the sexual battery occurred. The defendant does not challenge his other convictions.

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See La. Code Crim. P. art. 821(B); **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 660; **State v. Mussall**, 523 So.2d 1305, 1308-09 (La. 1988). The **Jackson** standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. **State v. Patorno**, 2001-2585 (La. App. 1st Cir. 6/21/02), 822 So.2d 141, 144.

At the time of the alleged offense, La. R.S. 14:43.1 provided in pertinent part:

> A. Sexual battery is the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim, when any of the following occur:
> (1) The offender acts without the consent of the victim.
> (2) The act is consensual but the other person, who is not the spouse of the offender, has not yet attained fifteen years of age and is at least three years younger than the offender.
>     *      *      *      *      *
> (C)(2) Whoever commits the crime of sexual battery on a victim under the age of thirteen years when the offender is seventeen years of age or older shall be punished by imprisonment at hard labor for not less than twenty-five years nor more than ninety-nine years. At least

10

twenty-five years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence.

The defendant argues in brief that K.D.'s testimony contradicted itself regarding the timing of the allegations against him. In support of his argument, the defendant provides a single page of testimony of K.D. on cross-examination, to wit:

Q. Let's start again. You spent about a month or less visiting in Louisiana at the end of your 4th grade, correct?
A. Yes.
Q. And during that visit, how old were you?
A. I was around 13.
Q. And nothing happened during that visit, correct? And when I say nothing happened, nothing you claimed was inappropriate happened, correct?
A. Nothing, that I can remember.
Q. All right. So the only two things that you claimed happened from your point of view were inappropriate up to that point, were the hand on your thigh and the hand on the butt, correct?
A. Yes.
Q. And so it's crystal clear, and I'm not trying to embarrass you. You don't claim that James touched your boobs up to that point, correct?
A. I'm sorry, you're going to have to --
Q. You don't claim that, all the way up to the end of that visit, that at any time James touched your boobs, do you?
A. Yes.
Q. You don't claim, and I'm going to use the word you used you used [sic] in the CAC, and I know you know the correct term. But you don't claim that he touched your Virginia at any time up to the end of that visit, do you?
A. No. He didn't start touching me until around the summer when I visited them after the 5th grade.

According to the defendant, the allegations by K.D. made at this point in the trial were there were two incidents with him that made her uncomfortable before K.D. moved to Louisiana to live with her grandmother and the defendant. The defendant notes that K.D. testified she moved in with them when she was around thirteen or fourteen. This testimony, the defendant asserts, matches the allegations that K.D. made during her CAC interview, wherein K.D. did not allege that any sexual battery occurred until after she moved to Louisiana to live with her grandmother and the defendant, when she was at least thirteen years old.

When K.D. testified about an incident that occurred when she was eleven or twelve years old, the defendant suggests in brief that K.D. was responding to leading

11

questions by the State on direct examination, and further, that the State itself was testifying when it asked K.D.: "So I want to talk to you when you got a little bit older. Like the summer before you went into the 5th grade, when you would have been about 11, going on 12. You were still living with your dad during that time? Jimmy?" The only question asked here, according to the defendant, was whether K.D. was living with her father at the time of a presupposed incident, to which K.D. simply responded, "Yes, ma'am."

Regarding the cross-examination of K.D., much of it was confusing and appeared to have confused K.D.[2] K.D. informed defense counsel that she was not good with dates. Moreover, K.D. testified that the first time she and her father moved in with the defendant and her grandmother was when she was in the third grade. In any event, the cross-examination of K.D. was rife with repetitive, confusing questions that at times left K.D. bewildered and unable to answer, which culminated in the above exchange (at block quote *supra*), and set out in the defendant's brief. In fact, shortly after this exchange, the trial court at a sidebar informed defense counsel of the confusion he had sown:

> Mr. Stern [defense counsel]: May we approach for a moment, Your Honor.
> The court: Please (whereupon, the following proceedings were held at sidebar, on the record:)
> Mr. Stern: It's not my place to offer her a break, but if she needs a break, I'd rather make sure I get accurate answers than just keep going and have her get progressively more confused.
> The court: You're returning with things that we've clearly treaded before. So to re-tread the first two times that she alleged that something happened, she's been clear about that. She's answered the questions each time. She's not asked for a break. Your question is now re-treading for a second or a third time. The only thing confusing her now,

---

[2] For example, at one point, defense counsel begins questioning the victim about when she first met the defendant and when the defendant first acted inappropriately towards her. Defense counsel asked whether on her first visit "to see" her grandmother, after the victim began living with her father, if the defendant was with her grandmother and did he act inappropriately. The victim said, "Yes," but then responded, "No. Not exactly" when she was asked, "[s]o the very first time you ever saw [the defendant], you claim he did something to you, correct?" On further questioning, it was revealed that the first time the victim saw the defendant was in Texas, not Louisiana. As the victim explained, "[m]aybe not the first visit. But I do remember when I was visiting them, I remember him doing something." So the victim's first encounter with the defendant was not when the victim went "to see" her grandmother in Louisiana, but while her grandmother and the defendant were in Texas.

12

has been this situation, if she's in fact been in a situation.

Mr. Stern: All right.

We note as well that, despite the defendant's assertion, K.D. made clear in her testimony that she did not tell the CAC interviewer everything that the defendant had done to her. On cross-examination, K.D. indicated she was unaware her CAC interview was going to be used in court or for other investigations. She thought the interview was for therapy. K.D. indicated she was very uncomfortable in the CAC interview talking about these things, and that she did not even tell the interviewer the worst part. When asked why she told the State that the abuse started in 2010, but stated in the CAC interview that it started in 2013, K.D. indicated that at that time (in the interview), she was "pretty shaken up" and did not want to speak about all of it and, as such, she was not providing all the information.

On direct examination, K.D. was asked to discuss what the defendant had done to her the summer before she went into the fifth grade, when she would have been about eleven years old, going on twelve years old. K.D. indicated that when she was sleeping in her bed, the defendant would rub her everywhere until she woke up. She described one incident during that summer when the defendant came into her room with a flashlight. He rubbed her thigh and vagina, and his hand went up her shirt. When asked why K.D. did not tell the CAC interviewer all of this, K.D. responded, "I wasn't comfortable with saying. I wasn't fully ready to say everything."

Aside from the above mentioned incident, which clearly established sexual battery (victim under the age of thirteen years), K.D. testified about other incidents, as well, that readily satisfy the definition of this crime. When asked if anything had happened to her when she was nine or ten years old, K.D. testified that she was sitting on the defendant's lap in a swimming pool, and the defendant began rubbing her "butt" and her vagina. See State v. Bouton, 615 So.2d 23, 25-26 (La. App. 3rd Cir. 1993). Also during this same period, there was an incident when K.D. was

13

sleeping in the bed between the defendant and her grandmother. She awoke to the defendant sticking his fingers in her "butt," pulling them out and licking them, then sticking them back in her "butt." K.D. described this specific incident again on redirect examination.

If there were any inconsistencies in the testimony, as suggested by the defendant, it was left to the jury to determine what was true or not true. The jury, that found the defendant guilty of sexual battery (victim under the age of thirteen years), was fully informed of any alleged inconsistencies in K.D.'s trial testimony regarding her various ages spanning the years of sexual abuse. See **State v. Weary**, 2003-3067 (La. 4/24/06), 931 So.2d 297, 311-12, cert. denied, 549 U.S. 1062, 127 S.Ct. 682, 166 L.Ed.2d 531 (2006). That is, these arguments raised by the defendant concern credibility issues. The jury heard all of the testimony and chose to believe the account of K.D. The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness. **State v. Higgins**, 2003-1980 (La. 4/1/05), 898 So.2d 1219, 1232, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a fact finder's determination of guilt. **State v. Taylor**, 97-2261 (La. App. 1st Cir. 9/25/98), 721 So.2d 929, 932. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. See **State v. Mitchell**, 99-3342 (La. 10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence that conflicts with the testimony accepted by a trier of fact does not render the evidence accepted

by the trier of fact insufficient. **State v. Clouatre**, 2012-0407 (La. App 1st Cir. 11/14/12), 110 So.3d 1094, 1100; **State v. Quinn**, 479 So.2d 592, 596 (La. App. 1st Cir. 1985).

The testimony of the victim alone is sufficient to prove the elements of the offense. **Clouatre**, 110 So.3d 1100; **State v. Orgeron**, 512 So.2d 467, 469 (La. App. 1st Cir. 1987), writ denied, 519 So.2d 113 (La. 1988). When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. **State v. Brooks**, 2017-1755 (La. App. 1st Cir. 9/24/18), 258 So.3d 944, 951, writ denied, 2018-1718 (La. 2/25/19), 266 So.3d 289; **State v. Moten**, 510 So.2d 55, 61 (La. App. 1st Cir.), writ denied, 514 So.2d 126 (La. 1987). The jury's verdict (regarding this count) reflected the reasonable conclusion that, based on K.D.'s testimony, the defendant committed sexual battery of K.D. when she was under the age of thirteen years. See **Brooks**, 258 So.3d at 951; **Moten**, 510 So.2d at 61.

After a thorough review of the record, we find the evidence supports the jury's verdicts. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of sexual battery (victim under the age of thirteen years) of K.D., as well as the uncontested crimes of molestation of a juvenile and second degree rape of K.D. See **State v. Calloway**, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam).

This assignment of error is without merit.

### ASSIGNMENT OF ERROR NO. 4

In his fourth assignment of error, the defendant argues that the trial court erred in accepting non-unanimous jury verdicts.[3]

---

[3] It was an 11 to 1 verdict for both counts 1 and 2. It was a unanimous verdict on count 3.

15

The defendant argues that a unanimous verdict is required under the Sixth Amendment. The defendant in brief recognizes the controlling jurisprudence in Louisiana and, as such, acknowledges that this court is "likely powerless to act on this important issue." The defendant, however, suggests that he is preserving his right to challenge his verdicts, particularly in light of the United States Supreme Court recently granting certiorari in **Ramos v. Louisiana**, \_\_U.S.\_\_, 139 S.Ct. 1318, 203 L.Ed.2d 563 (2019) (which will address the non-unanimous verdict issue).

It is well-settled that a constitutional challenge may not be considered by an appellate court unless it was properly pleaded and raised in the trial court below. A party must raise the unconstitutionality in the trial court, the unconstitutionality must be specially pleaded, and the grounds outlining the basis of unconstitutionality must be particularized. See **State v. Hatton**, 2007-2377 (La. 7/1/08), 985 So.2d 709, 718-20. In the instant case, the defendant failed to raise his challenge to Louisiana Constitution article I, § 17(A) in the trial court. Accordingly, the issue is not properly before this court.

Moreover, we note that Louisiana Constitution article I, § 17(A) and La. Code Crim. P. art. 782(A) provide that in cases for an offense committed prior to January 1, 2019 where punishment is necessarily at hard labor, the case shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. Under both state and federal jurisprudence, a criminal conviction by a less than unanimous jury does not violate a defendant's right to trial by jury specified by the Sixth Amendment and made applicable to the states by the Fourteenth Amendment. See **Apodaca v. Oregon**,[4] 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972); **State v. Belgard**, 410 So.2d 720, 726 (La. 1982); **State v. Shanks**, 97-1885 (La. App. 1st Cir. 6/29/98), 715 So.2d 157, 164-65. See also **State v. Smith**, 2006-0820 (La. App.

---

[4] Oregon's non-unanimous jury verdict provision of its state constitution was challenged in **Apodaca**. **Johnson v. Louisiana**, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), decided with **Apodaca**, upheld Louisiana's then-existing constitutional and statutory provisions allowing nine-to-three jury verdicts.

1st Cir. 12/28/06), 952 So.2d 1, 15-16, writ denied, 2007-0211 (La. 9/28/07), 964 So.2d 352; **State v. Caples**, 2005-2517 (La. App. 1st Cir. 6/9/06), 938 So.2d 147, 156-57, writ denied, 2006-2466 (La. 4/27/07), 955 So.2d 684.

Our supreme court in **State v. Bertrand**, 2008-2215 (La. 3/17/09), 6 So.3d 738, 743, found that a non-unanimous twelve-person jury verdict is constitutional and that Article 782 does not violate the Fifth, Sixth, and Fourteenth Amendments. Thus, while **Apodaca** was a plurality rather than a majority decision, the United States Supreme Court, as well as other courts, has cited or discussed the opinion various times since its issuance and, on each of these occasions, it is apparent that its holding as to non-unanimous jury verdicts represents well-settled law. **Bertrand**, 6 So.3d at 742-43. Thus, Louisiana Constitution article I, § 17(A) (or Article 782(A)) is not unconstitutional and, therefore, not in violation of the defendant's constitutional rights. See **State v. Hammond**, 2012-1559 (La. App. 1st Cir. 3/25/13), 115 So.3d 513, 514-15, writ denied, 2013-0887 (La. 11/8/13), 125 So.3d 442, cert. denied, 572 U.S. 1090, 134 S.Ct. 1939, 188 L.Ed.2d 965 (2014).[5]

This assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 5

In his fifth assignment of error, the defendant argues that his sentences are excessive.

The Eighth Amendment to the United States Constitution and Article I, § 20, of the Louisiana Constitution prohibit the imposition of cruel or excessive punishment. Although a sentence falls within statutory limits, it may be excessive. **State v. Sepulvado**, 367 So.2d 762, 767 (La. 1979). A sentence is considered constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and

---

[5] Given the well established law on this issue, defense counsel was not ineffective for failing to object to the non-unanimous verdicts, as suggested in brief by the defendant.

suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. See **State v. Fruge**, 2014-1172 (La. 10/14/15), 179 So.3d 579, 583; **State v. Andrews**, 94-0842 (La. App. 1st Cir. 5/5/95), 655 So.2d 448, 454. The trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive in the absence of a manifest abuse of discretion. See **State v. Shaikh**, 2016-0750 (La. 10/18/17), 236 So.3d 1206, 1209 (per curiam); **State v. Holts**, 525 So.2d 1241, 1245 (La. App. 1st Cir. 1988). Louisiana Code of Criminal Procedure article 894.1 sets forth the factors for the trial court to consider when imposing sentence. While the entire checklist of Article 894.1 need not be recited, the record must reflect the trial court adequately considered the criteria. **State v. Brown**, 2002-2231 (La. App. 1st Cir. 5/9/03), 849 So.2d 566, 569.

The articulation of the factual basis for a sentence is the goal of Article 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with Article 894.1. **State v. Lanclos**, 419 So.2d 475, 478 (La. 1982); **State v. Ducote**, 2016-1457 (La. App. 1st Cir. 4/12/17), 222 So.3d 724, 727. The trial judge should review the defendant's personal history, his prior criminal record, the seriousness of the offense, the likelihood that he will commit another crime, and his potential for rehabilitation through correctional services other than confinement. See **State v. Jones**, 398 So.2d 1049, 1051-52 (La. 1981); **State v. James**, 2016-1250 (La. App. 1st Cir. 2/17/17), 215 So.3d 269, 271. On appellate review of a sentence, the relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. **State v. Thomas**, 98-1144 (La. 10/9/98), 719 So.2d 49, 50 (per curiam).

18

The trial court sentenced the defendant to maximum sentences on each count and ordered the sentences to run concurrently. The sixty-four-year-old defendant argues in brief that the trial court failed to take into consideration the costs of jailing an elderly inmate with a serious health condition. According to the defendant, the trial court failed to take into account the cost of his imprisonment on the taxpayers, given that, as he continues to age, his housing costs will increase because of his heart condition and other physical ailments associated with aging.

It is clear in its reasons for the sentences that the trial court thoroughly considered Article 894.1. In arriving at appropriate sentences, the trial court was particularly cognizant of the vulnerability of the defendant's young victim. Maximum sentences may be imposed only for the most serious offenses and the worst offenders, or when the offender poses an unusual risk to the public safety due to his past conduct of repeated criminality. **State v. Parker**, 2012-1550 (La. App. 1st Cir. 4/26/13), 116 So.3d 744, 754, writ denied, 2013-1200 (La. 11/22/13), 126 So.3d 478. The trial court also specifically addressed why it was imposing maximum sentences. In sentencing the defendant, the trial court made the following findings:

> This Court listened to the testimony that was provided, and I've also considered the sentencing considerations contained in Code of Criminal Procedure Article 894.1
>
> In particular, in subsection (a), the application of paragraphs 1, 2, and 3. That there is an undue risk that during the period of suspended sentence of probation, that the defendant would commit another crime.
>
> That the defendant is in need of correctional treatment or custodial environment that can be provided most effectively by his commitment to an institution and that a lesser sentence would deprecate the seriousness of the defendant['s] crimes.
>
> Under subsection (b), I've also found that the offender knew, or should have known, that the victim of the offense was particularly vulnerable or incapable of resistance due to her youth.
>
> The defendant used his position or status to facilitate the commission of the offense. That the offense resulted in significant permanent injury to the child.
>
> That the events involve multiple victims or incidents for which separate sentences have not been imposed. And that the offender was persistently involved in similar offenses, not already considered his criminal history as a part of the multiple offender adjudication.

19

Any review in Court would be well advised to review the five hours of testimony provided by the child in this case, in which the damage to her future life prospects is manifest and tragic.

A Court reviewing this sentence would also be well-advised to review the testimony of all of the other victims of this defendant's offenses, and to see now that they are women who have beyond ten, twenty, or even thirty years still maintain the scars from the damage they suffered at his hands.

And thus, at this time, I chose to impose the maximum sentences for each count. I do so knowing that the Court of Appeals and the Supreme Court reserves for maximum sentences, only those worst of offenders, for which I do find that this defendant satisfies that definition.

The record before us clearly established an adequate factual basis for the sentences imposed. The defendant lived together for several years with K.D. and her grandmother, and ostensibly took on the roles of guardian and caretaker. The defendant used this relationship to exploit K.D.'s trust, and he repeatedly sexually abused her. See **State v. Kirsch**, 2002-0993 (La. App. 1st Cir. 12/20/02), 836 So.2d 390, 395-96, writ denied, 2003-0238 (La. 9/5/03), 852 So.2d 1024.

Considering the trial court's review of the circumstances and the nature of the crimes, we find no abuse of discretion in the imposition of these sentences. Moreover, given the reprehensible details of this case, the record provides ample justification for the sentences imposed. See **State v. Looney**, 2018-1416 (La. App. 1st 2/28/19), __ So.3d __, 2019 WL 990177. Accordingly, the sentences imposed are not grossly disproportionate to the severity of the offenses and, therefore, are not unconstitutionally excessive.

This assignment of error is without merit.

**CONVICTIONS AND SENTENCES AFFIRMED.**

20

STATE OF LOUISIANA                     2019KA0033

VERSUS                                 COURT OF APPEAL

JAMES MATTHEW COLE                     FIRST CIRCUIT

                                       STATE OF LOUISIANA

BEFORE: HIGGINBOTHAM, PENZATO, AND LANIER, JJ.

LANIER, J., CONCURS IN PART AND DISSENTS IN PART, AND ASSIGNS
ADDITIONAL REASONS.

I respectfully concur in part and dissent in part. I agree that the evidence in the record is sufficient to support the jury's verdict of guilty on count 2, molestation of a juvenile, and guilty on count 3, second degree rape. Thus, I would affirm the defendant's convictions and sentences on counts 2 and 3. However, as to the defendant's conviction and sentence on count 1, sexual battery of a victim under the age of thirteen years, I would reverse for the following reasons.

In my opinion, the defendant was prejudiced by the trial court's denial of the motion to continue when the State, on the morning of trial, amended the bill of information on count 1 to expand the date of the alleged offense by three years. I believe that the amendment of count 1 clearly represents evidence of a crime that was only disclosed to the State the day before trial and should have resulted in either a separate count against the defendant or a new bill of information, charging the defendant with a new and separate offense. Thus, the State's amendment of the bill of information did not expand the timeline of a known event, but added a new crime that had not been disclosed to the defendant until the morning of trial.

Moreover, on appeal, the defendant attacks the sufficiency of the evidence as to count 1. In the original bill of information, the alleged dates of the offense for count 1 were on or between June 1, 2013 and June 29, 2014. With the amendment allowed on the morning of trial, the starting date for count 1 was changed to June 30, 2010. While some of the testimony of the victim at trial was confusing as to

dates, it seems clear that the victim's testimony concerning the amended incident that occurred from June 30, 2010 to June 1, 2013, was clearly used as support for the conviction on count 1. Without this new evidence, I am not convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, the essential elements of count 1, sexual battery of a victim under the age of thirteen years.