STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2024 KA 0118

STATE OF LOUISIANA

VERSUS

WILLIAM EUGENE NAULTY

Judgment Rendered: **FEB 27 2025**

* * * * *

On Appeal from the
22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Trial Court No. 1952-F-2022, Section I

Honorable Reginald T. Badeaux, Judge Presiding

* * * * *

Jane C. Hogan                                      Attorney for Appellant,
Hammond, LA                                        William Eugene Naulty


J. Collin Sims                                     Attorneys for Appellee,
Matthew Caplan                                     State of Louisiana
Covington, LA


* * * * *

BEFORE: THERIOT, HESTER, AND EDWARDS, JJ.

**HESTER, J.**

The defendant, William Eugene Naulty, was charged by amended bill of information with sexual battery involving a victim under the age of thirteen (Count 1) in violation of La. R.S. 14:43.1(C)(2) and indecent behavior with juveniles under the age of thirteen (Count 2) in violation of La. R.S. 14:81(A)(1) and (H)(2). The defendant pled not guilty to the charges. Following a jury trial, he was found guilty as charged on both counts. The defendant filed a motion for new trial and motion for post-verdict judgment of acquittal, both of which the trial court denied. The trial court subsequently sentenced the defendant to twenty-five years imprisonment at hard labor on count one and two years imprisonment at hard labor on count two. The trial court ordered the sentences on both counts to be served concurrently and without benefit of probation, parole, or suspension of sentence. The defendant now appeals, alleging four assignments of error. For the reasons that follow, we affirm the convictions and sentences.

## FACTS

In October 2021, V.B. contacted the St. Tammany Parish Sheriff's Office and reported that her granddaughters, C.B. and J.B., of whom she had custody, disclosed they had been sexually abused by their mother's boyfriend, the defendant.[1] The victims indicated the incidents occurred years earlier when they were living with their mother and the defendant in Slidell. C.B. and J.B. were interviewed separately at the Children's Advocacy Center ("CAC"). Following an investigation, the defendant was arrested.

---

[1] Initials are being used to protect the identity of the minors in this case. See La. R.S. 46:1844(W)(3).

2

## SUFFICIENCY OF THE EVIDENCE

In his first assignment of error, the defendant argues the evidence is insufficient to sustain the convictions for sexual battery involving a victim under the age of thirteen and indecent behavior with a juvenile. He argues that his convictions are based on internally inconsistent statements from two young girls who admittedly hated him and blamed him for their mother's drug addiction. A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The constitutional standard for testing the sufficiency of the evidence, as enunciated in **Jackson v. Virginia**, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and adopted by the Louisiana Legislature in enacting La. Code Crim. P. art. 821, requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. **State v. Dunn**, 2021-0630 (La. App. 1st Cir. 12/22/21, 340 So.3d 77, 83, writ denied, 2022-00095 (La. 4/5/22), 335 So.3d 834.

The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness. **State v. Higgins**, 2003-1980 (La. 4/1/05), 898 So.2d 1219, 1232, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. **State v. Jenkins**, 2022-0562 (La. App. 1st Cir. 12/22/22), 357 So.3d 840, 844. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a verdict on the basis of an exculpatory hypothesis of

3

innocence presented to, and rationally rejected by, the jury. See **State v. Calloway,** 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (*per curiam*).

Sexual Battery

In count one, the defendant was found guilty of sexual battery of C.B. Pursuant to La. R.S. 14:43.1(A)(1) and (2), sexual battery is defined, in pertinent part, as the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, directly or through clothing, when the offender acts without the consent of the victim or when the victim has not yet attained fifteen years of age and is at least three years younger than the offender. Sexual battery is a general intent crime. Thus, the only intent necessary to sustain a conviction is established by the very doing of the proscribed act. See La. R.S. 14:11; **State v. Brown,** 2020-0150 (La. App. 1st Cir. 2/19/21), 2021 WL 650816, *5 (unpublished), writ denied, 2021-00458 (La. 6/1/21), 316 So.3d 835. General criminal intent is present whenever there is specific intent and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10(2).

C.B. testified that her date of birth is July 23, 2010. At the time of trial, she was twelve years old and in the seventh grade. In 2016, when C.B. returned to Slidell from visiting her maternal grandmother in Tennessee, the defendant had moved into their home in Slidell. During that time, her mother was employed as a nurse, and she worked a lot. In the mornings, as C.B. prepared for school, her mother would leave for work and would not return until after she had arrived home from school. According to C.B., the defendant was at home with her and her siblings when their mother was away, and he often was the only adult there.

C.B. testified that the defendant inappropriately touched her vagina when she was approximately six years old. She indicated the touching only occurred when

4

they were alone in a room. The first incident occurred when she was sitting on the edge of her bed. The defendant walked into the room, closed the door, walked over to her, and grabbed her vagina over her clothes with one of his hands, which hurt and was uncomfortable. Then he left the room without saying anything. C.B. was confused and scared because nothing like that had ever happened to her before.

C.B. also recalled a time when the defendant was sitting next to her on the living room couch and he placed his hand on her leg, so she scooted away. The defendant scooted closer and grabbed her vagina over her clothes.

C.B. recalled another incident when no one else was in the kitchen, and the defendant grabbed her vagina over her clothes. She was six years old at that time. The last incident that C.B. could recall occurred after she had just woken up and went to the defendant's room to ask him to make her something to eat. Her siblings were asleep, and her mother was not at home. The defendant got up, closed the bedroom door, and told her to sit on the edge of the bed. C.B. testified the defendant removed her clothes, sat behind her, reached over her shoulder, and grabbed her vagina with his hand. She testified he put his fingers inside her vagina, which hurt. C.B. bit the defendant on his arm, which caused him to yank his arm back. Then she got up, grabbed her clothes, and left the bedroom. During the last incident the defendant told her she deserved it because she was a bad kid, which convinced her that maybe she was bad and that some of this was her fault.

C.B. testified that after some of the incidents occurred, the defendant instructed her not to tell her mother or anyone else; otherwise, he would hurt her. C.B. believed he was serious. According to C.B., she did not tell anyone about the inappropriate touching because she was scared that either they would not believe her, they would become mad, or that the defendant would do something. After she was removed from her mother's custody, the inappropriate touching ceased.

5

C.B. indicated when she returned to school in August 2021, she was bullied. As a result, she began cutting her arm, resulting in her being admitted to Children's Hospital in New Orleans While at the hospital, a doctor asked C.B. if she had been sexually abused, and she responded in the negative. She explained the sexual abuse was not relevant to why she was in the hospital. C.B. further explained she was not familiar with the hospital staff. Therefore, she did not feel comfortable telling them about the sexual abuse. In 2021, C.B. told a friend about the sexual abuse after her friend disclosed an experience she had with her own stepbrother. C.B., who was eleven years old at the time, felt comfortable telling her friend and felt like the friend would believe her.

The first adult C.B. told about the abuse was the school counselor, who she had been seeing regarding the bullying incidents. Thereafter, she told her paternal grandmother. C.B. recalled being interviewed at Hope House in the CAC, and testified she was honest about everything she stated the defendant had done to her when she was around six years old.[2] C.B. explained that she came forward when she felt comfortable that people would believe her, that it was not her fault, and that no one was going to be mad at her. When questioned regarding her late disclosure, C.B. further explained no one told her that she was going to be forced to move to Tennessee to live full-time with her mother and the defendant. C.B.'s testimony was consistent with her CAC interview.

On cross-examination, C.B. testified that everything she told the staff while at Children's Hospital is accurate, except when she denied being sexually abused. C.B. testified that she did not tell J.B., who was older, about the abuse, noting: "I didn't know it happened to her, too. So, I just felt kind of singled out by it." She

---

[2] At trial, Cally Huggins, a senior forensic interviewer at the CAC, testified for the State. Ms. Huggins indicated that on November 15, 2021, she conducted separate forensic interviews of J.B. and C.B., which were recorded on audio and video. The interviews were played for the jury.

acknowledged that she told her grandmother that she did not want to move to Tennessee. C.B. indicated she wanted to stay in Slidell because of her relationship with her girlfriend,[3] and she did not want to hurt her mother's feelings or make her think she was a bad mother. However, when questioned regarding her motives for coming forward, C.B. denied making up the allegations to avoid being separated from her girlfriend.

At trial, C.B. testified regarding several incidents where the defendant intentionally touched her vagina in an inappropriate manner. She specifically recalled an incident where she was alone in the defendant's bedroom and he removed her clothes, grabbed her vagina with his hand, and put his fingers inside her vagina. C.B. testified regarding two other occasions when the defendant touched her vagina through her clothes—once while she was alone in her bedroom and another time while she was alone in the kitchen. These incidents occurred when they lived in Slidell and she was between the ages six and seven years old. At the time of the incidents described by C.B., the defendant was between the ages of twenty-nine and thirty years old.[4] The record supports a finding that the State presented sufficient evidence at trial to establish each element of the offense of sexual battery for which the defendant was convicted.

Indecent Behavior with Juveniles

In count two, the defendant was found guilty of indecent behavior with juveniles, which is defined, in pertinent part, as the commission of "[a]ny lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons" with the intention of arousing or gratifying the sexual desires of either

---

[3] C.B. testified that in 2021, she was dating a girl. She indicated they would hang out together and do things like go skating.

[4] According to the bill of information, the defendant's date of birth is September 2, 1986. Therefore, he was twenty-nine years old when he began dating C.B. and J.B.'s mother in 2016.

7

person. La. R.S. 14:81(A)(1). The Louisiana Supreme Court has defined "lewd and lascivious conduct" very broadly as any conduct which is "lustful, obscene, indecent, tending to deprave the morals in respect to sexual relations, and relating to the sexual impurity or incontinence carried on in a wanton manner." See **State v. Jones**, 2010-0762 (La. 9/7/11), 74 So.3d 197, 204. See also **State v. Boudreaux**, 2023-0993 (La. App. 1st Cir. 4/19/24), 390 So.3d 345, 354, writ denied, 2024-00695 (La. 1/28/25), ___ So.3d ___, in which this court noted that "lewd" means lustful or indecent and signifies that form of immorality that relates to sexual impurity carried on in a wanton manner and is identified with obscenity and measured by community norms for morality and that "lascivious" means tending to incite lust, indecent, obscene, and tending to deprave the morals in respect to sexual relations.

Indecent behavior with juveniles is a specific intent crime where the State must prove the defendant's intent to arouse or gratify his sexual desires by his actions with a child. **State v. Hartley**, 2023-0698 (La. App. 1st Cir. 1/23/24), 2024 WL 242792, *2 (unpublished). Specific criminal intent is that state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent need not be proven as a fact. It may be inferred from the circumstances of the transaction and the actions of the defendant. Specific intent is an ultimate legal conclusion to be resolved by the factfinder. **State v. McKinney**, 2015-1503 (La. App. 1st Cir. 4/25/16), 194 So.3d 699, 703, writ denied, 2016-0992 (La. 5/12/17), 220 So.3d 747.

J.B. testified that her date of birth is May 30, 2007. At the time of trial, she was fifteen years old and in the tenth grade. Similar to her sister, J.B. testified that her mother would sometimes already be gone before they woke up in the morning and would not return from work until after she arrived home from school. She

8

agreed the defendant was home more often than their mother and that he was often the only adult in the home.

J.B. testified the defendant touched her in an inappropriate manner. On the day in question, she had woken up early and gotten out of bed. She saw the defendant as she was walking down the hallway and greeted him. As the defendant walked past her, he grabbed her butt, which she indicated felt intentional because he squeezed it. After she laid down on the couch in living room, he followed her and touched her butt again. At that point, she returned to her bedroom because she felt uncomfortable. J.B. did not believe her mother was home at the time and no one else was in the room. J.B., who was nine years old when this occurred, did not tell her mother or grandmother about the incident.

J.B. confirmed that after her sister's disclosure in late 2021, she felt less alone and began telling people the defendant had done inappropriate things to her when they lived with him. J.B. stated: "I finally had an opportunity to get some kind of justice eventually." J.B. testified she did not know or see what was happening to her sister.

J.B. testified she did not talk about the abuse when it happened because she felt like people would have thought she was lying or that she was just a kid. She stated, however, knowing that something happened to both her and her sister made her feel like she had somebody to fall back on. In 2021, when she came forward with the disclosure, she was in a mental hospital because she was harming herself. J.B. denied that she and her siblings were about to be forced to leave Slidell and go live with their mother. J.B. stated she was honest with the forensic interviewer concerning what happened when the defendant lived in her home. Her testimony was consistent with the statements she made during her CAC interview wherein she indicated the defendant touched her "ass once" and grabbed her butt in the hallway one morning when she was nine years old.

9

J.B. explained that the text she sent to her grandmother stating she wanted to move to Tennessee to live with her mother was sent in February 2022, after the defendant had been arrested. J.B. was asked to clarify her text message: "[I] didn't [sic] really have anything happen to me other than him neglecting ud [sic]." J.B. explained that this was texted to her grandmother during a conversation about what happened to C.B. She clarified that she was telling her grandmother that, in comparison to what had happened to C.B., "nothing really as bad happened to me." On cross-examination, J.B. explained that she told her mother that she did not like the defendant when he first moved in with them, which she believed was before he had done anything.

J.B.'s testimony and her statements during the CAC interview were consistent. She stated that the defendant grabbed her butt with his hands and squeezed it twice. J.B. made independent, consistent, and detailed statements regarding the defendant's acts of sexual misconduct, which the jury found credible. Therefore, the record supports a finding that the State presented evidence at trial to establish each element of the offense of indecent behavior with juveniles and that J.B. was under the age of thirteen at the time of the offense, and the defendant, who was twenty-nine years old, was more than two years older than her. Accordingly, we find that a rational jury could find beyond a reasonable doubt that the defendant had the specific intent to commit a lewd and lascivious act upon the juvenile victim and committed an act for the purpose of and tending directly toward the accomplishing of this act.

The defendant argues there are multiple internal contradictions between C.B.'s statement to CAC and her trial testimony and that C.B. had motive to accuse the defendant as she was trying to avoid being sent to Tennessee to live with her mother. He also argued J.B.'s accusations are unbelievable because she did not accuse the defendant until after C.B. had already done so and "later admitted in a

10

text exchange that [the defendant] was only neglectful and not sexually abusive." He asserts that C.B. and J.B.'s testimony is simply insufficient to support the sexual battery conviction. The jury watched the CAC interview and, therefore, was aware of any alleged inconsistencies in C.B.'s trial testimony and still found the defendant guilty of sexual battery of a victim under the age of thirteen. The arguments raised by the defendant concern credibility issues. The jury heard all of the testimony and chose to believe C.B.'s and J.B.'s accounts of the incidents in question.

We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. See **State v. Mitchell**, 99-3342 (La. 10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence that conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. The testimony of the victim alone is sufficient to prove the elements of the offense. **State v. Clouatre**, 2012-0407 (La. App. 1st Cir. 11/14/12), 110 So.3d 1094, 1100. When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. **State v. Petitto**, 2012-1670 (La. App. 1st Cir. 4/26/13), 116 So.3d 761, 769, writ denied, 2013-1183 (La. 11/22/13), 126 So.3d 477.

After a thorough review of the record, we find the evidence supports the jury's verdicts. Viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of sexual battery (victim under the age of thirteen years) of C.B., as well as indecent behavior with a juvenile, J.B. This assignment of error is without merit.

11

## MOTION IN LIMINE

In his second assignment of error, the defendant argues the trial court erred in granting the State's motion in limine. Prior to trial, the State filed a motion in limine wherein it moved the trial court to prohibit the defendant from questioning the victims about whether they have voluntarily or involuntarily engaged in sexual activities with any person other than the defendant. Specifically, the State noted that police reports revealed C.B. disclosed in her CAC interview that a juvenile she identified as H.L. committed sexual battery against her in the summer of 2021. The defendant filed a response to the motion. At the hearing on the State's motion, following argument by the parties, the trial court ordered that the portion of C.B.'s CAC interview referencing the accusation against H.L. be redacted. In response to defense counsel's request for clarification, the trial judge subsequently stated, in pertinent part: "I think [La. Code Evid. art. 412] applies because ... the passage of time ... and because there's no information that would indicate that those statements were false." The judge also found that the prior accusation was irrelevant.

The defendant argues that the exclusion of any mention of C.B.'s accusation against H.L. violated of his fundamental right to confrontation. During the CAC interview, C.B. was questioned whether anyone else had sexually abused her. C.B. answered that a fourteen-year-old boy, H.L., also grabbed her crotch in an identical manner as the defendant. The State asserts the trial court properly excluded any mention of the other accusations against H.L. based upon the conclusion there is no information that would indicate those statements were false.

A defendant has a constitutional right to present a defense. See **Washington v. Texas**, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). The Sixth Amendment to the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee an accused in a criminal prosecution the right to confront and cross-examine witnesses. See **State v. Trosclair**, 584 So.2d 270, 275 (La. App. 1st

12

Cir.), writ denied, 585 So.2d 575 (La. 1991). The right to present a defense and to confront witnesses includes the right of a defendant to attack the credibility of a witness by examining him or her concerning any matter having a reasonable tendency to disprove the truthfulness of his or her testimony. See La. Code Evid. art. 607(C).

However, the right of an accused sex offender to present a defense is balanced against the victim's interests under La. Code Evid. art. 412 (the rape shield statute), which is meant to protect the victim of sexual assault from having her sexual history made public. See **State v. Curtin**, 2022-1110 (La. App. 1st Cir. 10/5/23), 376 So.3d 918, 931, writ denied, 2023-01464 (La. 4/23/24), 383 So.3d 603. When a defendant seeks to introduce evidence that the victim made prior false allegations of molestation, the trial judge must evaluate the evidence presented to determine whether reasonable jurors could find, based on the evidence presented by the defendant, that the victim had made prior false accusations and whether all other requirements of the Code of Evidence have been satisfied. See **State v. Smith**, 98-2045 (La. 9/8/99), 743 So.2d 199, 203-04.

Two requirements exist before evidence of prior sexual activity can be admitted for impeachment purposes, assuming this evidence is otherwise admissible. First, the activity must be of a sexual nature. Second, there must be evidence that the statement is false. **State v. Richard**, 2001-1112 (La. App. 1st Cir. 2/15/02), 812 So.2d 737, 739, writ denied, 2002-1264 (La. 11/22/02), 829 So.2d 1038. Assuming this initial burden is met, all other standards for the admissibility of evidence apply.[5] **State v. Freeman**, 2007-0470 (La. App. 1st Cir. 9/14/07), 970 So.2d 621, 624, writ denied, 2007-2129 (La. 3/14/08), 977 So.2d 930. Thus, constitutional guarantees do

---

[5] The admissibility of such evidence is still subject to all other standards for admissibility under La. Code Evid. arts. 403, 404, 607, 608, and 613. **State v. Bolden**, 2021-283 (La. App. 5th Cir. 6/30/21), 325 So.3d 602, 605.

not assure the defendant the right to the admissibility of any type of evidence, but rather only that which is deemed trustworthy and has probative value. See **State v. Governor**, 331 So.2d 443, 449 (La. 1976). Questions of admissibility of evidence are discretion calls for the trial court and should not be overturned absent a clear abuse of that discretion. **State v. Guzman**, 2022-0502 (La. App. 1st Cir. 11/17/22), 356 So.3d 1092, 1100, writ denied, 2022-01821 (La. 5/31/23), 361 So.3d 463.

In **Freeman**, 970 So.2d at 625, this court disagreed with the defendant's argument that the mere fact that the trial on the prior allegations resulted in an acquittal indicated the victim's allegations were false, noting the fact that another individual accused of raping the victim was acquitted does not establish that the accusation against that individual is false. It was further noted that at best, this evidence proves only that the State failed to meet its burden of proving the offenses charged. See **Freeman**, 970 So.2d at 625-26. This court found that the evidence presented at the hearing was not sufficient evidence from which a jury could reasonably conclude that the victim made a prior false accusation of sexual behavior. Moreover, the trial court stated the evidence was otherwise inadmissible under La. Code Evid. art. 403, as it was speculative and only minimally relevant, and its probative value would be greatly outweighed by its prejudicial effect. See **Freeman**, 970 So.2d at 626.

Here, the defendant argues it is undisputed the State never charged H.L. with any crime, which "highly suggests" that the accusation was deemed not credible. Citing **Smith**, 743 Sp.2d at 202, the defendant alleges as this was a prior false accusation that C.B. made against someone other than the defendant, he was entitled to use this false accusation for impeachment purposes. **Smith** is distinguishable from the instant case in that the defendant herein has offered no evidence that the victim ever retracted the prior allegation of sexual misconduct by H.L., and there was no independent witness to testify that the allegation was false. Based on the

14

foregoing, we agree that the trial court properly excluded any mention of C.B.'s accusation against H.L. This assignment of error is without merit.

## MOTION FOR NEW TRIAL

In his third assignment of error, the defendant argues the trial court erred in denying his motion for new trial based on a **Brady**[6] violation. Prior to sentencing, the defendant moved for a new trial on count one based upon several allegations, including the contention the State intentionally withheld crucial **Brady** information that impeded the defendant's ability to present a complete defense.[7] Specifically, the defendant alleged the State intentionally failed to provide additional text messages between J.B. and her maternal grandmother that directly related to J.B.'s testimony and contained **Brady** information. The defendant alleged his counsel only learned of the existence of additional texts during cross-examination of J.B. The defendant argued the entire text conversations should have been provided to him prior to trial under the State's continuing discovery obligation.

The grounds for a new trial are contained at La. Code Crim. P. art. 851. The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded. La. Code Crim. P. art. 851(A). The court, on motion of the defendant, shall grant a new trial whenever the trial court's ruling on a written motion or an objection made during the proceedings shows prejudicial error, see La. Code Crim. P. art. 851(B)(2), or if the court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right, see La. Code Crim. P. art. 851(B)(5).

---

[6] **Brady v. Maryland**, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

[7] The defendant also moved for post-verdict judgment of acquittal on count two, alleging that because the evidence viewed in the light most favorable to the State is insufficient and does not reasonably permit a finding of guilt under La. R.S. 14:81(H)(2).

In **Brady v. Maryland**, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that suppression by the prosecution of evidence favorable to the accused after receiving a request for the evidence violates a defendant's due process rights where the evidence is material either to guilt or punishment, without regard to the good or bad faith of the prosecution. See also **Strickler v. Greene**, 527 U.S. 263, 280, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999). The **Brady** rule encompasses evidence which impeaches the testimony of a witness when the reliability or credibility of that witness may determine guilt or innocence. See **United States v. Bagley**, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985); see also **State v. Kemp**, 2000-2228 (La. 10/15/02), 828 So.2d 540, 545 (*per curiam*).

Louisiana and United States Supreme Court jurisprudence both acknowledge that not every violation of the broad duty of disclosure constitutes a **Brady** violation. See **State v. Brown**, 2015-2001 (La. 2/19/16), 184 So.3d 1265, 1266 (*per curiam*). A prosecutor does not breach any constitutional duty to disclose favorable evidence unless the "omission is of sufficient significance to result in the denial of the defendant's right to a fair trial." **State v. Bright**, 2002-2793, 2003-2796 (La. 5/25/04), 875 So.2d 37, 42 (quoting **United States v. Agurs**, 427 U.S. 97, 108, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976)). However, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." **Agurs**, 427 U.S. at 109-110, 96 S.Ct. at 2400. Evidence is material only if there is a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed to the defense. A "reasonable probability" has been interpreted as "a probability sufficient to undermine confidence in the outcome." **State v. Strickland**, 94-0025 (La. 11/1/96), 683 So.2d 218, 234 (quoting **Bagley**, 473 U.S. at 682, 105 S.Ct. at 3383).

16

Thus, the reviewing court does not put the withheld evidence to an outcome-determinative test in which it weighs the probabilities that the petitioner would have obtained an acquittal at trial or might do so at a second trial. **Bright**, 875 So.2d at 42. Instead, a **Brady** violation occurs when the "evidentiary suppression 'undermines confidence in the outcome of the trial.'" **Kyles v. Whitley**, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995) (quoting **Bagley**, 473 U.S. at 678, 105 S.Ct. at 3381).

Here, the alleged **Brady** violation arises from a text message conversation between J.B. and her maternal grandmother. According to the defendant, an excerpt of the text message exchange was provided by the victims' mother to defense counsel in February or March 2022, when the victims' mother was still romantically involved with the defendant. The excerpt in question read as follows:

J.B.: [I] wanna [sic] move rlly [sic] badly but apparently its "illegal" for me to go out of her custody during a trial that [I] don't [sic] wanna [sic] have anything to do with

Nana: Did anything happen with you?

Nana: Ask the detective if it's illegal

...

Nana: I'm going to talk to God tonight

J.B.: [I] love you too goodnight and [I] didnt [sic] really have anything happen to me other than him neglecting ud [sic]

J.B.: us*

On direct examination, J.B. clarified the context of the text message.[8] Defense counsel asked: "And when the State went over these with you, when... [you] got here last Friday or whenever, did they ask you to provide the rest of that conversation?" J.B. responded: "They didn't ask. But I was able to pull up the

---

[8] See discussion *supra*.

17

conversation on my phone and give further context on it." J.B. admitted that she showed the State the full text conversation when they were preparing for trial.

At that time, the defendant did not object to the State's failure to provide the additional text messages. Instead, at the hearing on the motion for new trial, the defendant identified as **Brady** material the fact that the maternal grandmother believed someone else (identified as "Mr. Woodside" below) had inappropriately touched C.B. At the hearing on the motion, following argument by the parties, the trial court indicated defense counsel's best argument was concerning the text messages discovered during the course of trial and, in pertinent part, ruled as follows:

> But my understanding of **Brady** is that it's got to be something that could have affected the outcome. I don't believe it would have. I mean, the evidence in this case really relies on the believability and the credibility of the two victims who testified and whether or not the jury believed them or not.
>
> I do find that all the allegations about Mr. Woodside to be a bit of a red herring, which I consider, even if it's completely true, he wasn't on trial here. That was a single separate incident unrelated to the allegations against [the defendant].
>
> And to try to project it all onto Mr. Woodside and not [the defendant] is maybe somehow the girls made a mistake. I'm just not convinced of it. I'm not convinced it could have made a difference.
>
> And for those brief reasons ... I deny the motion for new trial and also the motion for post-verdict judgment of acquittal.

Here, J.B.'s testimony regarding the context of the text messages made clear that while she was inappropriately touched by the defendant, she felt the sexual misconduct the defendant perpetrated upon C.B. was worse than what she endured. Her testimony, along with the CAC video wherein she consistently stated the defendant grabbed her butt is sufficient to overcome any small impeachment value the defense could have obtained using the text messages. Thus, the absence of the additional text messages did not undermine the outcome of the trial. Accordingly, we do not find there was a reasonable probability that the result of the trial would have been any different had the defendant had a copy of the text messages in question

18

prior to trial instead of during the course of trial. As such, we do not find any discovery violation by the State. In light of the relevant jurisprudence, and based upon our review of the entire record, the trial court did not abuse its discretion in denying the motion for new trial. See **State v. Ruffin**, 2016-0264 (La. App. 1st Cir. 9/20/16), 277 So.3d 319, 325, writ denied, 2016-1913 (La. 9/15/17), 225 So.3d 483. This assignment of error is without merit.

## IMPROPER EXPERT TESTIMONY

In his fourth and final assignment of error, the defendant argues the trial court erroneously permitted the testimony of Dr. Paige Culotta. The trial court accepted Dr. Culotta as an expert in pediatrics and child abuse pediatrics, ruled that she may testify in the form of an opinion thereto, and overruled the defense's general objection. The defendant asserts Dr. Culotta did not merely testify about general reasons for delayed disclosures or lack of injuries in child sexual abuse cases. He contends her testimony exceeded the permissive scope when she opined that both C.B.'s and J.B.'s disclosures were consistent with sexual abuse. The State argues this assignment of error is not properly before this court because the defendant failed to lodge a specific objection on the grounds that Dr. Culotta's testimony exceeded the scope of her expertise. The State further argues even if this assignment of error were preserved for review, it lacks merit. Specifically, the defendant points to the following questioning of Dr. Culotta on direct by the State.

> **Q.** If a child is hospitalized for an unrelated reason … and if they were asked about child sexual abuse or physical abuse, would you be surprised they wouldn't disclose or deny any kind of prior sexual abuse in that environment?
>
> **A.** I wouldn't be surprised about that, no.
>
> **Q.** Even if they had been abused in the past?
>
> **A.** Correct.

19

Although defense counsel lodged a general objection after traversing Dr. Culotta, there was no specific objection to the foregoing testimony. A review of the record does not reveal that the trial court gave defense counsel a continuing objection to this line of questioning. It is well settled that defense counsel must state the basis for an objection when it is made, pointing out the specific error to the trial court. The grounds for objection must be sufficiently brought to the court's attention to allow it the opportunity to make the proper ruling and prevent or cure any error. See La. Code Evid. art. 103(A)(1); **State v. Williams**, 2010-1392 (La. App. 1st Cir. 2/11/11), 2011 WL 2178767, *5 (unpublished), writ denied, 2011-1028 (La. 3/9/12), 84 So.3d 542. Because defense counsel failed to contemporaneously object to any of the complained-of comments or questions on the basis they were outside the scope of Dr. Culotta's expertise, the defendant is procedurally barred from having this claim reviewed. See La. Code Crim. P. art. 841; **State v. Duhon**, 2018-0593 (La. App. 1st Cir. 12/28/18), 270 So.3d 597, 631, writ denied, 2019-0124 (La. 5/28/19), 273 So.3d 315.

## PATENT ERROR

Pursuant to La. Code Crim. P. art. 920(2), this court routinely conducts a review of all appeals for error discoverable by mere inspection of the pleadings and proceedings and without inspection of the evidence. **State v. Anthony**, 2023-0117 (La. App. 1st Cir. 11/3/23), 378 So.3d 766, 775, writ denied, 2024-00027 (La. 5/21/24), 385 So.3d 242. After a careful review of the record, we have found one error. The record reflects the trial court advised the defendant: "Any applications for post[-]conviction relief pursuant to Art. 930.8 of the criminal code must be filed within three years of your sentence becoming final."

A defendant generally has two years after the judgment of conviction and sentence have become final to seek post-conviction relief. See La. Code Crim. P. art. 930.8(A). Thus, the trial court provided incorrect advice regarding the

20

prescriptive period for seeking post-conviction relief. However, the trial court's failure to properly advise the defendant has no bearing on the sentence and is not grounds to reverse the sentence or remand for resentencing. See **State v. LeBoeuf**, 2006-0153 (La. App. 1st Cir. 9/15/06), 943 So.2d 1134, 1142-43, writ denied, 2006-2621 (La. 8/15/07), 961 So.2d 1158. Accordingly, this error is not reversible, and we decline to remand for resentencing.

Rather, we advise the defendant that La. Code Crim. P. art. 930.8(A) generally provides that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under the provisions of La. Code Crim. P. art. 914 or 922. **LeBoeuf**, 943 So.2d at 1143.

## DECREE

Based on the foregoing, the convictions and sentences of the defendant, William Eugene Naulty, are affirmed.

**CONVICTIONS AND SENTENCES AFFIRMED.**